Folger, J.
This is an action of ejectment, brought by a landlord against an under-tenant. When the action was commenced', the-term created by the original lease, had not expired by the- lapse of time. It is claimed however, that there had been a forfeiture- of the lease, by a breach by the lessees, of their covenant not to sub-let. That covenant is, that they will not sub-let, without the written consent of the lessor. It is followed by the condition, that in case of a violation or breach thereof) the lease- shall terminate, at the option of the lessor.
The first question isj did- the lessees sub-let the premises, *162 without the written consent of the lessor. They executed an instrument to Brower, by which they gave him a right in the premises, for two years and seven months, and a privilege for four years longer by his giving two months’ notice. The defendant contends, that this is not a sub-lease, but that it is an assignment of the lease to them, or of their term. It is said, that when a lessee conveys his whole estate to an alienee, the conveyance amounts to, and is called, an assignment ; and that the distinction between an assignment and a lease, depends solely upon the quantity of interest which passes, and not upon the extent of the premises transferred. .An assignment creates no new estate; but transfers an existing estate into new hands; an under-lease, creates a perfectly new estate. (Comyn on Land, and Ten., 51, 52.) In this case, these general principles will not entirely satisfy; and we must learn how they have been applied in particular instances. We find: that though a lessee make an instrument, which by its terms conveys the whole of his interest in the premises ; if he reserve to himself a reversion of some portion of the term, it is an under-lease, and not an assignment. (Archbold on Land, and Ten., 10.) It has accordingly been held; that though the instrument dispose of the whole unexpired term, if it contain a covenant to surrender the premises on the last day of the term it is an under-lease and not an assignment. (Post v. Kearney, 2 N. Y., 394.) And again, if there be a right reserved to the lessor to re-enter on breach of conditions, this makes a sub-lease. (Doe ex dem. v. Bateman, 2 Barn. & Aid., 168.) So it has been held, that a reservation of a new rent makes the instrument a sub-lease. (Piggot v. Mason, 1 Paige, 412.) Undoubtedly, the chief of these is the reversion of some portion of the term. (See Platt on Lease, 1 vol., p. 10, et seq.) Therefore, though the instrument executed to Brower does, in the term of two years and seven months demised, and in the privilege for the further term of four years, cover the whole unexpired term demised by the plaintiff to the Bronners; yet it is a sub-lease and not an assignment. It is in *163 the form of a lease; it reserves to the Bronners rent at a new rate and at a new time of payment; it stipulates for a right of re-entry on non-payment of rent, and on the breach of certain conditions contained in it; it provides for a surrender of the premises to them on the expiration of the term. Thus the Bronners did not part with their whole interest in the premises and in the lease thereof to them.
The case of Bedford v. Terhune (30 N. Y., 453), cited by defendant, does not conflict with these views. There no agreement to under-let was proven, nor any fact from which an underletting could be fairly inferred. The court recognized the general rule, that a transfer of the whole unexpired term, is an assignment thereof and not an underletting, and it declined to presume from the facts proved, that there was what would have worked a forfeiture; but held, in the absence of evidence of the bargain between the lessees and their assigns, that the presumption was,, that the latter took the whole unexpired term.
Having shown that the Bronners did sub-let the premises, it is plain, that it was without the written consent of the lessor. There is no dispute but that he did consent, in writing, to the sub-lease for the term of' two years and seven months. The jury have in one of their special findings declared, that he did not assent in writing to the lease made by the Bronners to Brower; which means that he did not thus assent to it as it was executed, with the privilege therein of the further term of four years. He did, after it was executed, assent in writing, to an assignment of it from Brower to Hawley and others. This was in ignorance of its provisions, so far as there was contained in them the privilege for the further term. Indeed, in view of the remarks of the court in reply to the exceptions to its charge, and which are to be taken as a further explanatory charge to the jury, we may assume that the jury have found that the lessor’s assent to that assignment was obtained fraudulently. So far as the lessees at least are concerned, that assent was therefore void. The conclusion is, that the execution of the instrument to *164 Brower was a sub-lease, without the written consent of the lessor. It was a breach of the covenant not to sub-let. It was an act of forfeiture of the lease. It gave to the lessor a right of re-entry upon the demised premises. It enables the plaintiff, prima facie, to maintain his action.
It is urged, however, that he has waived the forfeiture. The act of waiver is said to consist in the acceptance by him of rent reserved by the lease, which became due and payable after the act of forfeiture, and was accepted by him after he had notice of the act. It was at the option of the plaintiff whether he should avail himself of the act of forfeiture and take his right of re-entry, or whether he should waive it. Though the condition of the lease is, that upon a breach of the covenant, the lease shall thereby become terminated and ended, yet it is also expressed to be at the option of the lessor. In such case the lease is not void, but voidable. (Goodright v. Davids, Cowper, 804; Amsby v. Woodward, 6 B. & C., 519.) The jury have found that he had notice of the act of forfeiture in the forepart of January, 1870. The testimony shows that the plaintiff received payment of rent up to the 1st of April, 1870. As the rent was payable monthly, the presumption is that he received payment of it month by month ; and, hence, some part of it after notice of forfeiture. It would also be, that some portion of the rent received became due and payable after file act of forfeiture, and after notice to him of that act; that would be a waiver of the forfeiture. Notwithstanding the contention of the plaintiff, we see nothing in his testimony which leads to a different conclusion, when taken in connection with the special finding of the jury, just alluded to. An acceptance of rent eo nomine, which accrues after act of forfeiture and is received .after knowledge thereof, cannot ordinarily be made without .a recognition of the continuance of the tenancy. Such recognition is an election between the right to hold the tenant to his lease, and the right to enter and dispossess him. (See cases last cited.)
It is contended, however, by the plaintiff, that the act of *165 forfeiture did not take place until the 1st day of April, 1870, as that was the- day from which the extended term should begin. This would be to hold that the forfeiture was incurred, not by the creating of the term, but by the beginning of it; by the act of the sub-lessee in taking possession for the extended term, and not by the act of the lessees in creating that term. It was the latter which worked the breach of their covenant. When they executed the sub-lease they had done all that which they need do, to create a sub-letting for a term to which their lessor had not assented. When the defendant, in January, 1870, gave notice that.he exercised the privilege and took the extended term, the sub-letting therefor was complete. It was complete, because before that, and at the time when the sub-lease was executed by the lessees, the right to exercise that privilege was given by them, and they could not retract it. Having, then, done all that which they need to do to create an under-tenancy, they had then done all that which they need to do to work a breach of their covenant not to under-let. The purpose °in taking a covenant against sub-letting is to retain in the lessor a controlling power as to who shall come into the occupation of the premises. The covenant is broken when the lessee gives the right, so far as he can give it, to another to come in. This the lessees did by their sub-lease; and in this they made breach of their covenant not so to do.
It is further said, that the plaintiff having assented to a " sub-letting until the 1st of April, 1870, could not make re-entry until that day, and being debarred from re-entry, might take rent until then without waiver. However this might be, had the sub-letting until that day with his assent, been to one bona fide sub-tenant by one sub-lease; and the privilege of the extended term been given without his assent to another sub-tenant, it is not so here. This sub-lease is all one. It is between the same parties, at the same time. All join in working a breach of the covenant, and thus avoiding the lease which is the basis of the tenancy, and of all and any right to occupation.
*166 In charging the jury, the court said to them: “If the plaintiff had given no consent in writing to the sub-letting of these premises, and they had been sub-let, and he knowing that they had been sub-let, received rent from the tenant, he is then bound by the lease. If Bronner had sub-let these premises to Hasbrouck, without any written consent from the plaintiff, and the plaintiff had received rent from Hasbrouck for the premises after that, he could not say that this was void, because it was optional with him whether he would declare it so or not.” From this, and from the general verdict being in his favor, the plaintiff insists, that the jury must have found that he did not receive rent after he knew of the sub-letting. The testimony of the plaintiff was such, that the jury might have so found; but from their special finding, that he had information of the provision for the extended term, in the forepart of January, 1870, it is plain that they relied upon the testimony which was opposed to his in this particular. Besides, the proof was, that the payment of the rent up to 1st April, 1870, was received from Bronner, and not from Hasbrouck; as is the proposition of one of the sentences quoted from the charge. And the other sentence quoted is susceptible of a like application. We cannot suppose that the jury, by their general verdict, meant to contradict their special finding, when they were not strictly held to such conclusion by the charge. We conclude, that though-there was a forfeiture of the lease by the breach of the covenant, that there are facts in the ease as now appearing from which a waiver thereof was necessarily to be inferred. It is true, that a forfeiture may be suspended, and not waived. (Doe ex dem. v. Brindley, 4 Barn. & Adol., 84.) It must appear affirmatively that this is so. When there has been an act of forfeiture; when rent has accrued thereafter; when after knowledge of the forfeiture that rent has been accepted as rent by the landlord; if no other fact is shown, the necessary result is, that there is a waiver of the forfeiture.
The verdict of the jury was generally for the plaintiff; *167 and there were certain special findings. From these, and from the testimony in the case, there appears a- state of facts, without dispute, which presents a legal question, the proper solution of which makes it manifest, that the plaintiff cannot, as the case is now presented, maintain this action. After the verdict was rendered, the circuit judge ordered the case to be reserved for further argument and consideration, as he had power to do, under section 265 of the Code of Procedure. On such further consideration, he ordered judgment for the plaintiff, on the verdict. To this, exception was taken by the defendant. We think that the learned justice erred in the law of the case, for the reasons we have given.
The defendant has raised other questiqns in the case; that the plaintiff is estopped by his assent to the assignment of the sub-lease; and that the defendant is an innocent purchaser, and so to be protected, although the plaintiff was ignorant of the contents of the lease, 'and gave that assent by mistake. The facts of the case as now presented, do not sustain these positions of the defendant. On another trial, a fuller disclosure may make them more or less deserving of attention.
The judgment must be reversed and a new trial ordered,, with costs to abide event.
All concur, except Andrews, J., dissenting.
Judgment reversed.