WADDELL *et al. v.* PRESTON.

(*Knoxville,* September Term, 1935.)

Opinion filed July 15, 1935.

CANTRELL, MEACHAM & MOON, of Chattanooga, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a suit brought under the terms of a lease, against Thomas R. Preston, one of the lessees, to recover $21,719.93 for assessments for streets and other improvements.

It appears that Xen Wheeler leased to Thomas R. Preston, G. H. Miller, and F. L. Miller certain business property located on Market street and running through to Cherry street in the city of Chattanooga. The lease was for thirty years, beginning June 1, 1908, and terminating on May 31, 1938, at an annual rental of $10,000 during the first ten years, $11,000 during the second ten years, and $12,000 during the third ten years. Subsequently Wheeler died, and complainants succeeded to the ownership of the leased premises and to his rights under the lease.

The right of recovery is predicated on the following clause contained in the lease contract:

"The said parties of the second part agree to pay and discharge all taxes and assessments, State, County and Municipal, upon said property, including any and all charges, assessments, or impositions, for sidewalks, or streets, or other improvements in the streets, or ways abutting said property."

The assessment in question was made in accordance with chapter 457 of the Private Acts of 1927, which amended the charter of the city of Chattanooga and authorized the inclusion, in assessments for street improvements, of the cost, or a part of it, of acquiring land for widening streets.

Prior to 1905 all laws providing for assessments against abutting property owners for improvement of streets had been declared invalid by this court, but in

1905 (Acts 1905, chapter 278) an abutting property improvement law for the city of Knoxville was enacted and held valid. *Arnold* v. *Knoxville*, 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881. Thereafter chapter 149, Acts of 1907, was enacted amending the charter of the city of Chattanooga so as to authorize the assessment of a part of the cost of street improvements to abutting property. The cost so authorized to be assessed included the work of building the street, excluding grading and filling upon which the foundation of the street was to be laid. Thus, at the time the lease was made, the city of Chattanooga was vested with the power to improve the streets on which the demised premises are located and assess a part of the cost thereof on said property; but had no power to include in such assessment any part of the cost of land acquired for the purpose of the improvement.

Defendant demurred to the bill. The chancellor held that the lessees are not obligated "to pay that part of the assessment which represents the cost of land acquired for widening the street and the damages paid in connection therewith," and he so decreed. Complainants have appealed and assigned errors, which, in effect, raise only one question, to-wit: Is defendant lessee liable, under the lease, for that portion of the assessment in question representing the cost of land for widening the street on which the demised premises abut?

It appears from the bill that the property covered by the lease was valuable for business purposes, and that it had a large rental value; that everything at the time the lease was made indicated that this value would increase, and that the expectation was fully realized; that

for many years the property was very profitable to the lessees; that the original lessees were able to transfer their interest under the lease for a consideration of $50,000, as complainants are informed.

It is further averred that the lessor, Wheeler, "was unwilling to lease the property at these figures unless this stipulated rental should be absolutely net to him." It is apparent from the face of the lease that this was true. The provisions of the lease specifically impose upon the lessees the obligation to pay all insurance charges, and "*all* taxes and assessments, State, County and Municipal, upon said property, including *any* and *all* charges, assessments, or impositions, for sidewalks, or streets, or other improvements in the streets, or ways abutting said property." The lessees were plainly assuming to pay "*all* assessments" and "*any* and *all charges, assessments, or impositions, for sidewalks, or streets,* or *other* improvements in the streets, or ways abutting said property." No kind or character of assessment that might be made on the property by state, county, or municipal authority was excluded from the obligation assumed by the lessees. The intention of the parties was to include every kind of assessment that might be lawfully made by the state, county, or municipality during the term of the lease. The language of the clause of the lease under consideration is plain and unambiguous. The court cannot under the guise of construction change or alter its terms. The agreement on the part of the lessees to pay "*any and all charges, assessments, or impositions, for sidewalks, or streets*" cannot be cut down by the court and made into an agreement to pay only a *part* of an assessment for such purposes. The language used is

most comprehensive and must necessarily be held to include an assessment made for street improvement including an item for increasing the width of the street. Indeed, if there had been no street at the rear of this property, where these improvements were made, the cost of acquiring the right of way, included in an assessment made upon this property, would have properly fallen on the lessees, under the contract. It would have been an assessment or imposition "for streets."

It is insisted by defendant that the parties when making the lease contract had in contemplation only such assessments as then could be legally made for street improvements, and the deduction is sought to be drawn that because the cost of land necessary to the widening of a street could not then be included in an assessment, that it cannot now be included so far as his liability is concerned.

We think this contention untenable in view of the plain and unambiguous language of the lease contract. It is immaterial whether the cost of land necessary to the improvement of a street on which the property abutted could at that time have been included as an item of assessment.

In 16 R. C. L., 813, 814, it is stated: "A covenant that the lessee shall be liable includes not only such charges as may be imposed by laws then in force, but also such as may be authorized by laws afterwards enacted." In support of the text, the following cases are cited: *J. W. Perry Co.* v. *Norfolk*, 220 U. S., 472, 31 S. Ct. 465, 55 L. Ed., 548, affirming 108 Va., 28, 61 S. E., 867, 35 L. R. A. (N. S.), 167, 128 Am. St. Rep., 940; *Post* v. *Kearney*, 2 N. Y., 394, 51 Am. Dec., 303.

In several cases covenants by the lessee have been construed as requiring him to pay a special assessment for street improvements made under a statute passed after the execution of the lease: *Simonds* v. *Turner*, 120 Mass., 328, where an assessment for widening a street held within a covenant to pay "all taxes and duties levied or to be levied" on the property. *Post* v. *Kearney*, 2 N. Y., 394, 396, 51 Am. Dec., 303, assessment for opening of a street held within a covenant to pay "all such rates, taxes, and assessments . . . for which said premises shall be liable, or shall be raised, levied, or assessed on the same during the continuance of the lease." *Miller* v. *Lankard*, 1 Pittsb. R., 75, assessment for street grading and paving held to be within a covenant to pay "all taxes and assessments which may be made" on the property leased during the term. These and other cases are collected in a note appearing in L. R. A., 1915A, 336.

In *Love* v. *Howard*, 6 R. I., 116, a case strongly relied on here by defendant, a covenant by the lessee in a lease for ninety-nine years to pay "all taxes and assessments" of every kind that might be assessed on the leased premises during the term was construed as not requiring the lessee to pay an assessment for the opening of a street laid under a law enacted subsequent to the execution of the lease. The position taken was that such a benefit assessment was a departure from the ordinary mode of taxation existing at the time the lease was executed, and so extraordinary that it could not have been within the contemplation of the parties. This case was decided in 1859, before special assessments had become the usual method of providing for street improvements. Another case relied on by defendant is *Ten Eyck* v. *Albany*, 65

Hun., 194, 20 N. Y. S., 157, where it was held that a lessee was not required to pay an assessment for repaving a street with granite more than thirty years after the execution of the lease, in place of cobblestone, where the lease provided that during the term the lessee would pay the taxes ''and also all assessments for paving, flagging, or repairing the street adjoining said premises, but assessments, . . . of an extraordinary character or for permanent improvements,'' should be paid by the lessor. The work of repaving with granite blocks being regarded by the court as being of an extraordinary character or permanent improvement, the assessment was held one for which the lessee was not liable.

Neither *Love* v. *Howard*, *supra*, nor *Ten Eyck* v. *Albany*, *supra*, is in point in the instant case. Here we have a covenant not only that the lessees shall pay ''all taxes and assessments,'' but, also, that they shall pay ''any and all charges, assessments, or impositions, . . . for streets.''

The other cases relied on by defendant are readily distinguishable from the case at bar. The wording of the particular covenant involved in the reported cases in great part accounts for the seeming diversity of opinion reflected therein. We have been cited to no case where the covenant was the same, or substantially the same, as the covenant here before the court. It must be admitted that a lessee may, by apt words, bind himself to pay ''*any and all*'' assessments made on the leased premises for street improvements. This defendant did, under the clause of the lease above quoted.

We do not understand defendant to contend that the language of the lease is insufficiently broad to include

the assessment here in question. His position is, as we understand it, that the system of including in the assessment for street improvement the item of cost of land used in such improvement not having been adopted by the city, under legislative authority, at the time the lease was executed, could not have been within the contemplation of the parties. We think this position is untenable. The intention of the parties was to lease net to the lessor, during the whole term of the lease, at the rental provided for. Hence, it was agreed by the lessees that they would pay "any and all" assessments for street improvements. The system of improving streets and assessing abutting property on the basis of benefits received was well known to the parties. The parties were on notice that the powers possessed by the city could be changed, altered, or enlarged. We know of no authority holding that an assessment of the same general kind, or made on the same principle as assessments in use at the date of the lease, will be excluded merely because certain items are included, by after-acquired authority, which could not have been previously included.

After a careful consideration of the question made, we are of the opinion that the chancellor was in error in refusing to hold defendant liable for the whole amount of the assessment against the demised premises.

Reversed and remanded.