VAN RENSSELAER *vs.* GIFFORD.

The fact that a lease or grant was executed to two persons, jointly, will not in any way affect the liability of an individual as assignee of a part of the premises charged with the rent.

If the grantees have made partition of the demised premises, between themselves, and a portion thereof has come to a third person, by descent or purchase, he is liable for the proportionate share of the rent chargeable thereon, as assignee of the lessee.

His liability is the same if he has purchased from both the grantees. Inasmuch as the covenant to pay the rent reserved in the lease runs with the land, it is enough to establish the liability of an assignee that he has, in some way, succeeded to the rights of the original grantees, in a part of the lot. How he acquired such rights is immaterial.

Where several persons, being the owners of land chargeable with rent, as tenants in common, make partition between themselves, each assuming the payment of his equitable share of the rent, the purchase of a portion of the land, by the owner of the rent, will not extinguish the liability of the person owning the other portion of the premises.

After a contract has been entered into, between the tenants, for the severance of their interests, each is at liberty to deal with the lessor as he may see fit, without reference to the other, and to extinguish his liability, either by a release or a sale.

The lessor may make himself a party to such an agreement, as well by purchasing the land of one of the tenants and thus extinguishing the rent by merger, as by a release.

No dealing between the owner of the rent and the owner of a part of the land, thus held in severalty, can affect either the rights or the liability of the owner of the residue.

Van Rensselaer *v.* Gifford.

Evidence that a person occupying a portion of premises originally leased to several persons jointly, has settled with the lessor for the rent due upon that part of the demised premises occupied by him, is, in the absence of any proof to the contrary, sufficient to justify the inference that a division of the lands has been made between the different owners, and that they have, by contract, made an apportionment of the rent between themselves.

A rent payable in fowls and service with carriage and horses is not, in its nature, indivisible, or incapable of being apportioned.

Where the owners of land chargeable with rent which cannot be apportioned, make a partition between themselves, each becomes liable for the whole rent; *it seems.*

THIS action was brought to recover rent. It was tried at the Albany circuit, in April, 1854, before Mr. Justice HARRIS. The plaintiff gave in evidence a lease in fee executed by Stephen Van Rensselaer, his father, to Samuel Rider and Elihu Gifford, bearing date the 15th of February, 1799, for lot number 15 in the town of Rensselaerville, reserving a rent of 22½ bushels of wheat, four fat fowls and one day's service with carriage and horses. The plaintiff also proved that by the will of his father he had become the devisee of the rent claimed. A witness for the plaintiff testified, that in 1841 the defendant had settled for the rent on the east half of the lot described in the lease, by giving his note therefor, and that the amount of rent in arrear on the east half of the lot, at the time of the commencement of the suit, with interest thereon, was $250.89. Of this sum, $11 was for the day's service, and $2.75 for fowls, and $5 for interest on these items. Upon his cross-examination the witness testified, that Joel Rider was in possession of the west half of the lot, and that the defendant claimed to be in possession of the east half. The plaintiff having rested, the defendant gave in evidence a sheriff's certificate, from which it appeared that on the 25th of March, 1844, the sheriff of the city and county of Albany, by virtue of an execution against Joel Rider, sold his right, title, claim, interest and estate in and to the west half of lot number 15 in Rensselaerville, and that upon such sale the plaintiff became the purchaser. Also, a sheriff's deed executed in pursuance of such sale, bearing date the 3d of July, 1845. The testimony being closed, the counsel for the

defendant insisted that, inasmuch as the lease was executed to Samuel Rider and Elihu Gifford, their heirs and assigns jointly, and the covenants on their part were joint, and not several, covenants, the action should have been against Joel Rider and the defendant jointly. The court refused so to decide, and the defendant's counsel excepted. The defendant's counsel further insisted, that the purchase of half the premises by the plaintiff, under the execution against Rider, extinguished the rent upon the defendant's half of the lot, from the time of such purchase, and that, therefore, the plaintiff was not entitled to recover for any rent accruing after such sale. The court refused so to decide, and the counsel for the defendants excepted. The defendant's counsel further insisted, that there could be no apportionment of the fat fowls and the day's service reserved in the lease, and therefore, after the purchase of the interest of Joel Rider in the lot by the plaintiff, he could not recover for this part of the rent reserved. The court refused so to hold, and the defendant's counsel excepted. The counsel for the defendant further insisted, that the plaintiff was only entitled to recover for one day's service with carriage and horses. The court declined so to decide, and the defendant's counsel excepted. The court decided that the plaintiff was entitled to recover the sum of $250.89, as proved. To this decision the defendant's counsel excepted. Judgment having been entered, upon the decision, the defendant appealed to the general term.

*C. M. Jenkins*, for the plaintiff.

*A. J. Colvin*, for the defendant.

*By the Court*, HARRIS, J. The fact that the original lease or grant was to two persons jointly, cannot in any way affect the liability of the defendant as assignee of a part of the premises charged with the rent. If, as is probable, the grantees made partition of the lot between themselves, and the east half of the lot had come to the defendant by descent or purchase, he would be liable for the proportionate share of the rent chargeable

thereon as assignee of the lessee. His liability would be the same, if he had purchased from both the grantees. As the covenant to pay the rent reserved in the lease runs with the land, it is enough to establish the defendant's liability that he has, in some way, succeeded to the rights of the original grantees in a part of the lot. How he acquired such rights is quite immaterial. (*Van Rensselaer* v. *Bradley*, 3 *Denio*, 135. *Same* v. *Gallup*, 5 *id.* 454.)

It is claimed by the defendant that though he may have become liable as assignee of the east half of the lot for its proportionate share of the rent, yet that the plaintiff, by his purchase of the other half at the sheriff's sale, in 1844, released him from such liability. Upon this point it might be sufficient to say, that it does not appear that the plaintiff, by means of his purchase, acquired any title or interest in the premises described in the deed. No evidence was given to show that at or before the time of the sale, the defendant in the execution had any interest in the lot liable to such sale, or if he had, that any judgment had been recovered against him which was a lien thereon. Nor did it appear that the plaintiff had ever acquired possession of the premises under his deed from the sheriff. On the contrary, it appeared affirmatively that, at the time of the trial, the defendant in the execution was himself in possession. Assuming, therefore, that a purchase of part of the premises by the plaintiff would operate to extinguish his claim for rent upon the residue, the facts of the case would not warrant the application of the rule.

But it has just been held, in *Van Rensselaer* v. *Chadwick*,(a) that where several persons, being the owners of land chargeable with rent, as tenants in common, make partition between themselves, each assuming the payment of his equitable share of the rent, a release to one of the owners does not extinguish the liability of the other. The same principle is applicable to the case of a purchase of a portion of the land by the owner of the rent. The tenants, having by their own contract severed their interest in the land, and each, independently of the other, agreed to pay

(a) Ante, p. 333.

his just proportion of the rent chargeable upon all the land, each is at liberty to deal with the owner of the rent as he may see fit, without reference to the other, and, either by a release or a sale, to extinguish his liability. The tenants having, as between themselves, agreed to become severally liable, each for his own share of the rent, the owner of the rent might make himself a party to that agreement, as well by purchasing the land of one of the tenants and thus extinguishing the rent by merger, as by a release. No dealing between the owner of the rent and the owner of a part of the land, thus held in severalty, could affect either the rights or the liability of the owner of the residue.

In this case, the evidence of a partition of the land and a division of the rent between the owners, is not as conclusive as it was in the case of *Van Rensselaer* v. *Chadwick*, but I think it is sufficient to sustain the decision at the circuit. In *Farley* v. *Craig*, cited in the opinion of the court in *Van Rensselaer* v. *Chadwick*, it was considered that the payment of a specific amount of rent for a specified part of the lands subject to the rent, for a series of years, was abundant evidence of an apportionment of the rent by contract between the several owners of the land. The evidence in this case shows that, in 1841, the defendant settled for the rent upon the half of the lot which he then had in possession, and which he continued to hold up to the time of the trial. In the absence of any proof to the contrary, I think this evidence was sufficient to justify the inference that a division of the lands had been made between the different owners, and that they had, by contract, made an apportionment of the rent between themselves. Indeed the fact was not disputed at the trial. It seems to have been assumed that the defendant was the owner of the east half of the lot, and that the owners had each assumed to pay their proportionate share of the rent.

Again ; it is insisted that it was error to allow the plaintiff to recover for that part of the rent payable in fowls and service with carriage and horses, for the reason that such rent is, in its nature, indivisible, and therefore cannot be apportioned. I do not think the premises upon which the argument rests are tena-

ble. Is such rent, in its nature, indivisible? In the case under consideration, what would prevent the apportionment of the four fat fowls and the day's service to be rendered annually between the two tenants of the land chargeable therewith? I am unable to see why such division would not be as practicable as in any other case. But if it be conceded that these rents are indivisible, it seems from the authorities cited by Mr. Justice Jewett in *Van Rensselaer* v. *Bradley*, (3 *Denio*, 142,) that where the owners of land chargeable with rent which cannot be apportioned, make a partition between themselves, each becomes liable for the whole rent. If this be so, and by the division of the land the defendant and the owner of the other half had each become chargeable with the whole rent payable in fowls and service, the extinguishment of that part of the rent chargeable upon the other half of the land could not affect the defendant's liability.

The only remaining point made upon the trial was, that which relates to the construction to be given to the provision in the lease reserving, as a part of the rent, one day's service with carriage and horses. This point has already been considered and determined in *Van Rensselaer* v. *Chadwick*. I am of opinion, therefore, that the judgment at the circuit should be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, May 1, 1855. *Wright, Harris* and *Watson*, Justices.]